480 P.2d 1010

The STATE TAX COMMISSION of Arizona, Appellant,

v.

BRUCE TERMINIX, INC., an Arizona corporation, Appellee.

No. I CA–CIV 1282.

Court of Appeals of Arizona,
Division 1,

Department A.

Feb. 22, 1971.

Rehearing Denied March 23, 1971.

Gary K. Nelson, Atty. Gen., by Leonard M. Bell, Asst. Atty. Gen., Phoenix, for appellant.

Stewart & Pickrell, Ltd., by Robert W. Pickrell, Phoenix, for appellee.

DONOFRIO, Judge.

This is an appeal by the State Tax Commission of Arizona, hereafter referred to as the Commission, from a summary judgment in favor of appellee Bruce Terminix, Inc. Appellee commenced the action in the Superior Court for refund of transaction privilege and excise taxes paid under protest for the period beginning December 1, 1964, and ending August 31, 1967. Appellee will hereafter be referred to as Terminix.

Terminix is the owner and operator of an establishment within the State which offers pest and termite control to the general public. For the period involved Terminix reported its income from its pest control operations to the Commission as if Terminix operated as a contractor. The Commission audited the records of Terminix and thereafter informed Terminix of an additional assessment due in part to reclassification of the income of Terminix from its pest control operations from contracting to retail. Terminix filed a petition for redetermination with the Commission pursuant to A.R.S. § 42–1338. Upon denial of its petition the company paid under protest the additional taxes assessed and properly perfected its appeal by filing this action in the Superior Court in which the summary judgment was entered.

Terminix's motion for summary judgment did not contest the reclassification of its pest control income from contracting to retailing, but it did challenge the right of the Commission to assess additional transaction privilege and excise taxes based upon the total gross proceeds from both materials and services on the pest control business.

Central in this appeal is a section of the Arizona Revised Statutes, A.R.S. § 42–1312, subsec. B, which provides:

"B. When any person is engaged in an occupation or business to which subsection A of this section is applicable, such person's books shall be kept so as to show separately the gross proceeds of

sales of tangible personal property and the gross income from sales of services, and if not so kept the tax shall be imposed upon the total of such person's gross proceeds of sales of tangible personal property and gross income from services."

The appeal also concerns the Commission's Regulation 2.17.2(g) which was promulgated to apply to pest control businesses, and which provides:

"When pest control charges to the customer are invoiced separately for labor and materials the tax shall apply only on the materials; otherwise, the tax shall be imposed on the total billing."

Terminix contends that the Commission, in adopting Regulation 2.17.2(g), supra, exceeded its power to adopt reasonable rules and regulations. It argues that the Commission entered into the field of legislation by changing and adding to the provisions of A.R.S. § 42–1312, subsec. B.

It is undisputed that Terminix's books were kept to show the exact labor cost and overall monthly material cost for each phase of income of its business. It is to be noted that only the pest control phase is involved herein.

It is Terminix's contention that it should have been assessed for sales taxes based only on gross proceeds from sales of materials (pesticides) because its books were kept so as to show separately the gross proceeds of sales of tangible personal property and gross income from sales of services. In support of its contention Terminix states it is unable, on a practical basis, to keep track of the amount of pesticide used on any particular premises, but that it is able to keep track of the amount and the cost of pesticides used in its overall operation over any given period of time and that it is upon this amount of pesticide that the tax should be paid as provided in A.R.S. § 42–1312. It urges that the Commission exceeded its authority in requiring by Regulation 2.17.2(g) that pest control charges be invoiced separately to the customer for

labor and materials and in the event the taxpayer fails to meet such requirement, assessing the tax on the total billing.

It would be a serious matter to strike down a regulation involving an entire industry. We have reviewed the record in this case with great care. We find, as we shall endeavor to point out, that the record is not adequate to establish the rights of either party. On the basis that there is a genuine issue of fact, which has been raised, we hold that the trial court's granting of summary judgment was improper.

Terminix in its argument assumes that its books were kept so as to show separately the gross proceeds of sales of tangible personal property (pesticides) and the gross income from the sale of services. We are unable to agree that these facts have been established without contradiction.

Aside from the pleadings, the record consists of answers to the interrogatories, a hearing before the Tax Commission on January 22, 1968, and the affidavit of Mr. Hymer, president of Terminix, attached to the motion for summary judgment.

In the affidavit Mr. Hymer stated that the books were "kept so as to show separately the gross proceeds of the sales of tangible personal property and the gross income from sales of services, *as provided in section 42–1312, A.R.S.*" We have emphasized the last part of the quoted phrase to indicate that we believe it qualifies that part of the phrase antecedent to the emphasized portion, thus making the statement a legal conclusion. After considering his testimony at the hearing, we believe that what affiant is saying is that his conclusion is that the books were kept as provided by statute not necessarily that books have both an item that shows gross proceeds of sales of pesticides, and another, gross income from sale of service as such, distinguished from the price of material.

On this point we quote pertinent portions of testimony taken at the January 22nd hearing at which Mr. Hymer and his attor-

ney, Mr. Pickrell, were present before the Commission:

"DeWitt: How have you kept your books to show the difference between the cost of labor and material on these items if you don't bill it to your customer?

"Hymer: I have a master sheet here of chart of accounts where we break down our pest control on the income into three different categories. The expense accounts are broken down into three different corresponding categories for each category of exact expenses of the labor and material. We break down our termite contracts * * * our work, one, two, three, four, five, six, seven different categories with the like number of expenses corresponding to the particular account. Weed control inspection, shelf items, retail package items, and miscellaneous income are all broken down in the same manner so that we can distinguish within our books the exact labor cost and over-all monthly material cost for each phase of income and these are as I say illustrated by the chart of accounts that we do keep. Does this answer your question?

"DeWitt: Yes, sir."

\* \* \* \* \* \*

"Hymer: It is a physical impossibility for me to accurately break down my billing of materials utilized on specific jobs. I would be put in a guessing game which I don't care to partake in. We have no way of measuring exact amounts of any materials in the pest control category of the industry utilized on each and every job. Plus, I'll be a little repetitious, I attended most of those, if not all of the hearings, previous hearings, and meetings with the commission. I stated then and I will state again that in an attempt to have my service men or any service man in the pest control field attempt to break down the exact amount of labor, the exact amount of materials on specific individual jobs, would be a

hardship and a handicap on the industry, individually or collectively, inasmuch as I personally feel it would delete at least two stops, as we term them, a day from each and every pest control route by the time consumed by this man attempting to measure or guess or estimate the amount of materials used on the job. But, briefly, to answer your question we'd put in a guessing game rather than in specifics."

\* \* \* \* \* \*

"Pickrell: We have no uniform mark-up as such acceptable by the industry or by ourselves. This would be arbitrary basis and (interrupted by Mr. Trasente).

"Trasente: You would have to take the cost of materials used during that particular month and this is the figure that you (interrupted by Mrs. Sullivan).

"Mrs. Sullivan: Yes that's the figure.

"DeWitt: You reported along then just on your basic cost of your materials, less your labor and that's the amount you show as your total gross income, less cost of materials is what you have paid on for your sales tax?"

All other evidence in the record is along the same lines. On the basis of the hereinabove quoted testimony from the hearing, we can only conclude that the books are kept to show only the amount of pesticides used each month and the cost to Terminix of said material; that through a master sheet or chart of accounts Terminix breaks down income and expenses into different categories, allocating certain amounts, no doubt, to each category; that there is no certain way of breaking down the quantity of materials used on specific jobs; that there is no uniform markup as such in the industry; and that Terminix for the tax period considered the cost of the material used as a sale upon which to pay the tax.

Applied to this case, a sale as defined by A.R.S. § 42–1301, subsecs. 11 and 12 means a transfer of the pesticide for a consideration (price). The record nowhere discloses

with the certainty required in a case de-·cided by summary judgment what portion of the total charge to each customer is determined by the materials used. The ·chart of accounts referred to by Mr. Hy-·mer at the hearing is not contained in the ·record before us.

The Commission's power to make rules .and regulations is limited to such rules and ·regulations as are necessary to efficiently ·carry into effect the provisions of the law :as written and to accomplish its purposes. Any rule or regulation going beyond this ·limitation would be void. Swift & Com-·pany v. State Tax Commission, 105 Ariz. .226, 462 P.2d 775 (1969).

If the evidence were undisputed as to :a universal practice in the industry of charging the customer only the actual cost ·of the material used and, as contended by Terminix, the books were kept so as to show, using the cost price, the gross sales ·of the materials, we might not have diffi-·culty in finding compliance with A.R.S. § .42–1312, subsec. B and that therefore Reg-·ulation 2.17.2(g) is unreasonable as exceed-·ing the power of the Commission to make ·rules and regulations. However, the evi-·dence is too nebulous on this point.

On the other hand, if it is not the uni-·versal practice of the industry to so charge, and the material is sold at varying prices ·to customers, the regulation could very well be reasonable.

The appellant has not made an issue in ·its motion for summary judgment of cer-·tain matters which were originally urged before the Commission, namely, question-ing the reclassification of the pest control ·operation from contracting to retail, and contending that the pest control business is a sale of services in which property is an inconsequential element and therefore ·tax exempt. We wish it clearly understood ·that we do not pass upon either of these ·questions.

The Court feels that because of the un-·resolved issues of material fact in the rec-·ord it is unable to establish the rights of either party. Under the circumstances the granting of summary judgment was error.

Reversed.

STEVENS, P. J., and KENNETH C. CHATWIN, Judge, Maricopa County Superior Court, concur.

NOTE: Judge JAMES DUKE CAM-ERON was a member of Department A of Division One of the Court of Ap-peals at the time this cause was argued. He requested that he be relieved from consideration of this matter and Judge KENNETH C. CHATWIN, a judge of the Superior Court, was called to sit in his stead and participate in the deter-mination of this decision.